No. 84-339

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

STATE OF MONTANA,

  Plaintiff and Respondent,

  -vs-

DON LIAS,

  Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Charles E. Petaja; Petaja and Smoyer, Helena,
    Montana

  For Respondent:

    Hon. Mike Greely, Attorney General, Helena, Montana
    Mike McGrath, County Attorney, Helena, Montana
    Carolyn A. Clemens, Deputy County Attorney, Helena

Submitted on Briefs:  June 13, 1985

Decided:  September 26, 1985

Filed:  SEP 26 1985

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

The appellant, Don Lias, was convicted in Justice Court on the charge of driving under the influence. He appealed to District Court, and a jury returned a verdict of guilty. He now appeals to this Court.

We affirm.

At about 9:00 p.m. on May 28, 1983, appellant, in search of his business partner, went to a stock car race near Helena, Montana. He purchased one beer and then a second. After purchasing the second beer he was involved in a fight, and the beer was spilled on him. He was injured in the fight and suffered severe pain and disorientation. He then found his business partner and left to go home. He contends he did not drink any more that night.

Between 11:00 p.m. and 12:00 midnight, a highway patrolman found appellant asleep in a vehicle parked in the median of Interstate 15. The vehicle lights were on, and the engine was running.

When appellant awoke, the patrolman found him somewhat impaired in speech and mobility. The patrolman detected a strong smell of alcohol. After some discussion and informing himself of the situation, the patrolman arrested appellant for driving under the influence. Appellant refused a field sobriety test. He showed indications of belligerence and noncooperation. Because of appellant's belligerence, the patrolman radioed for help. An assisting officer arrived, and appellant was taken to jail.

In Justice Court, on August 30, 1983, appellant was found guilty of driving under the influence. He appealed to the District Court, and on April 9, 1984, a six-person jury

returned a verdict of guilty. Appellant appeals to this Court.

The issues presented are:

1. Whether certain testimony elicited by the prosecutor was in violation of an order granting a motion in limine to preclude certain testimony and, if so, absent timely objection, whether was it plain error, depriving appellant of a fair trial.

2. Whether sufficient evidence supports the verdict of guilty beyond a reasonable doubt.

The first issue is whether certain testimony violated an order precluding mention of certain matters and, if so, whether, absent a timely objection, it falls within "plain error." The testimony violated the order, but no objection was made. We determine that the plain error doctrine does not apply.

On appeal from Justice Court to District Court, appellant filed a motion in limine to preclude:

> 1. Any reference to a finding of guilty in Justice Court.
>
> 2. Any reference, by way of impeachment or rebuttal or otherwise, to any statements made by Defendant in Justice Court.

A minute entry is the only record of a ruling on the motion in limine. It stated that the motion was granted. The State argues that it understood the granting of the motion to not preclude evidence of statements made by the appellant under oath for purposes of impeachment. The motion, according to the minute entry of the clerk of court, was granted in its entirety and prohibited such testimony. However, the record as to precisely what the court ruled in chambers with relation to the motion in limine is not

complete, as no record exists of the discussion and ruling on the motion other than the clerk of court's minute entry. Rule 613, Mont.R.Evid., authorizes the use of prior inconsistent statements for the purpose of impeachment.

The questioned testimony was testimony elicited on cross-examination and testimony by a rebuttal witness called to impeach appellant by a prior inconsistent statement. The subsequent inconsistent statement was elicited by the prosecution on cross-examination:

> Q. Isn't it true that on August 30, 1983, while under oath you stated that you had had nothing to drink on May 28, 1983?
>
> A. I don't think so.

In response to a question regarding statements made by appellant on August 30, 1983, concerning drinking, the rebuttal witness, called to impeach the above testimony, stated:

> A. He said, no, he didn't, he hadn't consumed any alcohol that day.

August 30, 1983, was the date of the trial at Justice Court. All reference to statements made by the appellant at that trial were prohibited by the granting of the motion in limine. It was error for the prosecution to elicit the statement on cross-examination, and it was error to introduce the rebuttal testimony. However, such errors are, in this case, harmless errors.

The absence of appellant's objection to or the court's intervention in the cross-examination and rebuttal testimony suggests that counsel and the court recognized that the motion in limine could not properly prevent the use of prior inconsistent statements for impeachment purposes under Rule 613, Mont.R.Evid. Here the substantial rights of the appellant were not affected. Viewing the entire record, the

4

questioned testimony could only have had little, if any, damaging effect on the jury determination. If error, it was harmless error, and the "plain error" doctrine does not apply. Errors not affecting substantial rights shall be disregarded. Section 46-20-702, MCA.

The second issue is whether substantial evidence supports the jury verdict. In applying the substantial evidence test to determine whether there was sufficient evidence to support the jury verdict, this Court is governed by established principles. In applying the test the evidence is viewed in a light most favorable to the prevailing party. The weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact. If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail. The test is met if a reasonable mind would accept the evidence as supporting the conclusion reached. State v. Green (Mont. 1984), 685 P.2d 370, 371-372, 41 St.Rep. 1562, 1564; State v. Johnson (1982), 197 Mont. 122, 127, 641 P.2d 462, 465; State v. Martinez (1980), 188 Mont. 271, 281-282, 613 P.2d 974, 980.

In this case substantial evidence supports the jury verdict. Appellant was found asleep in his vehicle parked in an interstate median. The vehicle lights were on, and the engine was running. He was impaired in speech and mobility and there was a strong smell of alcohol about him. He showed signs of belligerence and noncooperation.

Affirmed.

_____
Chief Justice

5

We concur:

_John Conway Harrison_

_Frank H Morrison_

_J. J. Miller_

_L. C. Gulbrandson_

_____
Justices

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent and would reverse. After his conviction in Justice Court, where he appeared pro se, the defendant appealed to the District Court. Prior to trial, defendant moved the court and the court granted a motion in limine to prevent all references in the trial de novo in the above cause to any of the following:

1. Any reference to a finding of guilt in Justice Court.

2. Any reference, by way of impeachment or rebuttal or otherwise, to any statements made by defendant in Justice Court.

There are three issues in this case. They are:

1. Whether reversible error was committed by the prosecutor, when, during cross-examination of the defendant and without objection by the defendant, he asked questions that were in violation of the order granting a motion in limine.

2. Whether the testimony admitted without objection in violation of the court's order was "plain error" depriving appellant of a fair trial.

3. Whether sufficient evidence supports the verdict of guilty beyond a reasonable doubt.

A motion in limine may be used to exclude evidence that, even if relevant, has probative value substantially outweighed by the danger of unfair prejudice. See, Rule 403, M.R.Evid. Authority for the granting of a motion in limine rests with the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties. Wallin v.

Kinyon Estate (1974), 164 Mont. 160, 164-165, 519 P.2d 1236, 1238, citing 94 A.L.R.2d 1087.

As Professor Crowley has stated:

The motion in limine is not provided for in either the statutes of Montana or the Rules of Civil Procedure. It has, however, been recognized as a valid and useful procedure by the Montana Supreme Court in several cases (the first and principal decision endorsing its use was Wallin v. Kinyon Estate, 164 Mont. 160, 519 P.2d 1236).

The Latin phrase "in limine" means "at the threshold" or "in the beginning" and was used at the early common law to denote motions that were preliminary in character. Currently, however, the term is used to denote motions made before or even during trial to forbid certain lines of inquiry or limit or prohibit the use of particular evidence." William F. Crowley, Montana Pleading and Practice Forms, p. 99 (1983).

The prosecution gave as its reason for asking the question that raised the first issue in this case, as that its understanding of the court's ruling was that the State could not present evidence that appellant had been convicted in Justice Court, but that it could, for purposes of impeachment, present evidence of statements made by appellant under oath. I think that the motion is plain on its face and it would be difficult to believe that there could be any mention or reference to the Justice Court trial for any purpose, including impeachment.

The motion was argued in chambers. The record is a minute entry that states, "[p]resent in chambers, out of the presence of the jury, were the Deputy County Attorneys . . . attorney for the defendant . . .. Upon presentation the Court denied the motion to dismiss and granted the motion in limine." The prosecution's argument that its understanding of the court's ruling was that the State could not present evidence that appellant had been convicted in Justice Court, but that it could, for purposes of impeachment, present

- 8 -

evidence of statements made by appellant under oath is not persuasive. As this Court has stated, "[i]t is not the duty of the prosecution to make independent determinations concerning the admissibility of evidence once the court rules such evidence is inadmissible. Willful attempts by counsel to place excluded evidence before the jury may result not only in a mistrial, but reversal." State v. Bain (1978), 176 Mont. 23, 29, 575 P.2d 919, 923.

Defendant argues that he did not object for the reason that an objection or a motion to strike would not have cured the damage done to defendant in violation of his substantial rights. He cites a recent case of this Court finding prejudicial and reversible error, because an admonition by the court to disregard the information would not suffice to remove the prejudice from the minds of the jurors because "the goose is already cooked." Workman v. McIntyre Construction Company (Mont. 1980), 617 P.2d 1281, 1285, 37 St.Rep. 1637, 1642.

Defendant also argues that the conduct of the prosecution in introducing prejudicial evidence in violation of the court's ruling, has deprived him of a fair and impartial trial, and is therefore grounds for a new trial. In Bain, 575 P.2d at 923, this Court said that "[i]n determining whether such questions are so prejudicial to the defendant as to require reversal, this Court must look (1) to the reasonable inference to be drawn from the question, State v. Toner, [(1953), 127 Mont. 283, 263 P.2d 971] and (2) whether such repeated attempts to offer excluded evidence might have contributed to the conviction. State v. Langan (1968), 151 Mont. 558, 445 P.2d 565."

What is the inference to be drawn from the questions asked of appellant in this case? Since there was no reference directly to the Justice Court trial and conviction, the questions and answers on cross-examination of the witness on rebuttal must show indirectly that defendant was prejudiced.

In District Court on cross-examination, in response to the questions of the prosecution, the appellant testified as follows:

> Q. Mr. Lias, did you on August 30th, 1983, while you were under oath make certain statements regarding the same issues that we're here discussing today? A. On August 30? Yes.
>
> Q. Isn't it true that on August 30th, 1983, while under oath you stated that you had nothing to drink on May 28th of 1983? A. I don't think so.
>
> Q. Mr. Lias, isn't it true that on August 30th, 1983 you stated that under oath, and, once again, that you had no idea how the smell of alcohol got on your body on May 28th, 1983? A. The testimony on August 30th you say? (Emphasis added.)
>
> Q. Yes.

The rebuttal witness testified as follows:

> Q. Okay. Dan, did you have an opportunity on or about August 30th to hear some statements made by the defendant in this case? A. Yes, I did.
>
> Q. And during the time that you heard those statements, do you recall whether or not he was under oath? A. Yes, he was. (Emphasis added.)

I would hold that these kind of questions raise a strong inference that the jury might well conclude that the defendant had been tried in another court and that his testimony was conflicting. The actions of the prosecution were done in violation of the order of the court.

As to the second part of the Bain rule, that "whether such repeated attempts to offer excluded testimony might have contributed to the conviction" we must only decide here

whether the one and very successful attempt to get the evidence in was a contributing factor to the conviction. The evidence in this case was conflicting. The arresting officer and the deputy that came to his assistance both testified that the defendant was under the influence of alcohol and based their opinion on training and experience in dealing with persons under the influence of alcohol. Ms. Edie Wood, a witness called by the defense testified that the defendant had been in a fight that day and during that fight the beer that he held in his hand was spilled all over him. After the fight she helped him up from the ground. She did not see him drink any more beer. She testified that defendant had been hit and kicked severely during the fight and was unsteady and complaining about injuries to his body. He told her that he thought that he was alright except for his hand. She did not see him again that night.

Another witness called by the defense, Roger Hayle, the partner of the defendant in the egg business, testified that he saw the defendant that day and that the defendant told him that he had been in a fight and complained of his hand. Hayle testified that defendant's hand was swollen up to the point where you couldn't see the muscles. He noted bumps and bruises on the head of the defendant. He offered to drive the defendant to the doctor or home but the defendant refused because he needed his truck to get to work. The defendant told him that he had to be at work by 6:00 a.m. the next morning so he would have to go home in his truck so that he would have it to go to work. Hayle testified that he had worked as a bartender and had some experience with seeing intoxicated people and in his opinion the defendant was not intoxicated when he saw him at the races. He testified that

- 11 -

he offered to drive the defendant home because of his injuries and not because he thought he was under the influence.

The trial judge who was in the best position to weigh the effects of the testimony was not called upon to rule in this matter because there was no objection. We are called upon to decide a question that was not before the trial judge, but is raised for the first time on appeal. I believe that the adverse effect of the testimony obtained for the purpose of impeachment may well have influenced the jury. The defendant's failure to object does not overcome the prejudice he suffered as a result of the prosecution's violation of the court order that there cannot be "[a]ny reference, by way of impeachment or rebuttal or otherwise, to any statements made by the Defendant in Justice Court."

I do not consider the second issue of plain error or the third issue of whether there was sufficient evidence to support the verdict of guilty beyond a reasonable doubt because of my belief that there was reversible error committed by the prosecutor.

I would reverse.

_____
Justice

Mr. Justice John C. Sheehy, concurs in the foregoing dissent of Mr. Justice Hunt.

_____
Justice