No. 87-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

THE STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

LEONARD PETER LAMPING,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis And Clark,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund F. Sheehy, Jr., Cannon and Sheehy; Helena, MT

    For Respondent:

        Honorable Mike Greely, Attorney General, Helena, MT
        Mike McGrath, County Attorney, Helena, MT
        Carolyn Clemens, Deputy County Attorney, Helena, MT

---

Submitted on Briefs: February 25, 1988

Decided: March 29, 1988

Filed: MAR 2 9 1988

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Leonard Peter Lamping, the defendant, was convicted of sexual intercourse without consent by jury trial in the District Court of the First Judicial District, Lewis and Clark County. Defendant appealed.

We affirm.

The issues raised on appeal are:

1. Whether the District Court erred in denying the defendant's motion for a new trial?

2. Whether sufficient evidence exists to sustain the defendant's conviction for sexual intercourse without consent?

On October 29, 1986, Leonard Peter Lamping, the defendant, was convicted under § 45-5-503(1) and (3), MCA, of sexual intercourse without consent arising from a March 31, 1986 incidence. At the time of the act, Lamping was 45 years of age and the victim was 15 years of age. Lamping was sentenced to serve 25 years in prison with 10 years suspended.

The series of events which lead to the felonious act began on March 30, 1986 when the victim and a female companion ran away from home. The two girls spent the day in the Scratch Gravel Hills. Later that day, the girls received a ride into the Helena city limits and went to the home of the victim's boyfriend. The boyfriend was not at home, so the girls went to the apartment building which housed an acquaintance, Rick, and also the defendant, Lamping. The girls decided to remain in the hallway but were later invited into the two-room apartment by Lamping. The evening of March

30, 1986, the girls slept on the floor of the apartment which housed, among others, the defendant Lamping.

The following day, March 31, 1986, the girls remained in the apartment. The victim testified that early in the evening she became tired and laid down on the bed located in the front room. She further testified that Lamping then laid down on the bed next to her and performed the sexual act. Lamping testified that he did not perform any sexual acts on the child nor touch her in an inappropriate way. He further testified that he had laid down on the bed first and that the victim then laid down next to him.

Fourteen other people were available to testify to what they saw transpire between Lamping and the victim during the early evening of March 31, 1986; to what actions the victim took to escape Lamping; and to whether she appeared scared during any of this time. At the trial, the State called five out of the possible 14 witnesses they had listed. Among those not called to testify was Kenneth Bennett.

The first issue raised on appeal is whether the District Court erred in denying Lamping's motion for a new trial. Lamping argues that Kenneth Bennett's proposed testimony was newly discovered evidence upon which the District Court should have granted him a new trial. Lamping had access to a prepared police report that indicated Bennett's proposed testimony, yet Lamping claims that the "exact nature" of Bennett's proposed testimony was not known to him until after the trial and conviction. In asserting his claim, Lamping relies upon the State's decision not to call Bennett to testify after the State served him with a subpoena. Lamping argues that once he was aware that Bennett was served with a subpoena he reasonably believed that Bennett would testify.

The State interviewed Bennett on October 27, 1986 and decided not to have him testify because past experiences

proved he was an unreliable witness and because parts of his testimony were cumulative. The District Court determined that the State did not hide a witness from Lamping and that Bennett's proposed testimony would be cumulative. The court thus denied Lamping's motion for a new trial based upon Lamping's claim of newly discovered evidence.

The District Court did not abuse its discretion in refusing to grant a new trial. Section 46-16-702(1), MCA, allows a district court to grant the defendant a new trial "if required in the interest of justice." However, applications for new trials are not favored when a defendant has had ample opportunity to present his case. State v. Pease (Mont. 1987), 740 P.2d 659, 664-65, 44 St.Rep. 1203, 1210; State v. Kutnyak (Mont. 1984), 685 P.2d 901, 909, 41 St.Rep. 1277, 1287; State v. Higley (Mont. 1980), 621 P.2d 1043, 1055, 37 St.Rep. 1942, 1955; State v. Greeno (1959), 135 Mont. 580, 586, 342 P.2d 1052, 1055. In the present case, Lamping argues that the "exact nature" of Bennett's proposed testimony was not available to him at the time of trial. The record demonstrates that the State listed Bennett as a witness; Lamping had access to the police report indicating the nature of Bennett's proposed testimony; and Lamping made little or no efforts to contact Bennett to question him about his statement to the police officer. Lamping also made no efforts during the trial to call Bennett after knowing the State was not going to call him.

The State does not have an obligation to call every witness listed nor an obligation to reveal the "exact nature" of a witness's testimony. The District Court found that the State did not hide a witness from Lamping. The record supports this finding and we conclude that Lamping had ample opportunity to determine for himself the "exact nature" of Bennett's testimony and to present his case. Thus, Lamping's

motion for a new trial is disfavored, but the application of the factors listed in Greeno to the present case is required to determine whether the District Court properly denied the motion.

In Greeno, this Court sets forth six factors that governs when a new trial, based on newly discovered evidence, should be granted. The six factors are: (1) knowledge of the evidence came after the trial; (2) lack of due diligence is not the reason for not discovering the evidence earlier; (3) the evidence is so material that upon a new trial a different result is likely; (4) the evidence is not cumulative; (5) the witness whose evidence is allegedly newly discovered must support the application for a new trial by affidavit; and (6) the evidence must not merely tend to impeach the character or credibility of a witness. Greeno, 135 Mont. at 586, 342 P.2d at 1055 (citing State v. Matkins (1912), 45 Mont. 58, 68, 121 P. 881, 885). The District Court in this case held that Bennett's proposed testimony was cumulative. A review of the record supports this finding.

The record shows that if Bennett had been called to testify, the relevant parts of his testimony would have included that, while he was in the apartment, he did not see Lamping and the victim under any covers while they were on the bed and he never saw the victim in her underwear; that he assisted the victim out of the bathroom window; and that she was not bleeding when she escaped the apartment nor did she appear scared when she escaped. In this case, four or more witnesses testified to each of the above facts. Parts of the witnesses' testimony harmonized with Bennett's proposed testimony and other parts contradicted it.

Lamping contends that Bennett's proposed testimony is not cumulative because three statements of the proposed testimony completely contradicts all of the other witnesses'

- 5 -

testimony and that such testimony would allow a jury to believe Lamping's testimony and reject the victim's and other witnesses' testimony. Consequently, Lamping argues that Bennett's proposed testimony would probably produce a different result.

As long ago as 1912, in State v. Matkins (1912), 45 Mont. 58, 121 P. 881, this Court adopted the six factors that governs when a motion for a new trial is granted. In that decision, we expounded upon the requirement that the evidence must not be cumulative. More specifically, we stated that the alleged newly discovered evidence must not speak to facts to which there was evidence at the trial. Matkins, 45 Mont. at 68, 121 P. at 885. In the present case, four or more witnesses have already testified on all of the statements to which Bennett proposes testimony. While the statements may be contradictory to the evidence already in existence, this does not preclude such statements from being cumulative. The reasoning being that:

> [i]t is often the case that the sense of loss arouses [the appellant] to the diligent activity which he should have put forth before the trial. By importunity he then interests his friends and through them brings to his support evidence which, if not false, is only cumulative or impeaching in character, and the efficacy of which to produce a different result is speculative and dependent entirely upon the personal characteristics of another jury.

Matkins, 45 Mont. at 67, 68, 121 P. at 885.

We hold that Bennett's proposed testimony is cumulative of facts already in existence. The District Court did not abuse its discretion when it denied Lamping's motion for a new trial based upon the alleged newly discovered evidence when the court found such evidence cumulative.

The second issue raised on appeal is whether sufficient evidence exists to sustain Lamping's conviction for sexual intercourse without consent. The substantial evidence test controls when the appellant alleges the jury's verdict is not sustainable because of insufficient evidence. State v. Oman (Mont. 1985), 707 P.2d 1117, 42 St.Rep. 1565; State v. Berklund (Mont. 1985), 704 P.2d 59, 42 St.Rep. 1147. Under this test, the verdict is sustained if a reasonable person might accept the evidence as adequate to support the conclusion when the evidence is viewed in a light most favorable to the prevailing party. Oman, 707 P.2d at 1120, 42 St.Rep. at 1568; Berklund, 704 P.2d at 60, 42 St.Rep. at 1148-49. Only when the evidence is so inherently incredible that a reasonable person would not accept it as true, will this Court set aside the verdict. Oman, 707 P.2d at 1120, 42 St.Rep. at 1568; State v. Radi (1978), 176 Mont. 451, 461, 578 P.2d 1169, 1176; State v. Crockett (1966), 148 Mont. 402, 407, 421 P.2d 722, 724-25.

To support Lamping's argument that the victim's testimony is so inherently incredible that no reasonable person ought to accept it as true, defense counsel contends that it is inherently incredible that a 45-year old man could have performed sexual intercourse on a 15-year old girl with other people in the apartment; that if such an act occurred, the victim could have protested loud enough to attract the attention of others in the apartment; and that it is inherently incredible that other people in the apartment had difficulty getting the victim out of the apartment over the threats of Lamping.

This Court will not reexamine the evidence when substantial evidence exists to support the verdict. Here, Lamping, the victim, and several other witnesses testified to the events that occurred during the evening of March 31,

1986.    Parts of the witnesses' testimony supported the victim's testimony, other parts contradicted it and supported Lamping's.  The weight of the evidence and the credibility of the witnesses is exclusively within the province of the trier of facts.    When conflicting evidence exists, the jury determines which evidence prevails.  Berkland, 704 P.2d at 60, 42 St.Rep. at 1149; State v. Green (Mont. 1984), 685 P.2d 370, 371-72, 41 St.Rep. 1562, 1564.   The defense counsel also argues that the only evidence that established the sexual intercourse element and that the victim was bleeding is the victim's own testimony.   This Court has consistently held that a conviction of sexual intercourse without consent is sustainable based entirely on the uncorroborated testimony of the victim.   State v. Maxwell (1982), 198 Mont. 498, 503, 647 P.2d 348, 351; State v. Metcalf (1969), 153 Mont. 369, 378, 457 P.2d 453, 458.

Upon reviewing the record, we hold that substantial evidence exists to support the jury's verdict.   We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices